I represent the petitioner, Mr. Calexico Jimenez, on this matter. This case involves the denial of asylum application as well as withholding deportation matter based on an adverse credibility finding. The Board of Immigration Appeals affirmed the conclusions of the immigration judge with respect to the outcome of denying the asylum application as well as the withholding deportation claim. However, it added on a little twist and put in a statement that even if credible, the petitioner still did not establish the eligibility requirements for asylum and the application for deferral. In this case, essentially the immigration judge assessed her adverse credibility finding based on several factors, one of which was the decision that it was improbably illogical that the military officer would warn the petitioner of the pending coup that was to take place in Guatemala. Essentially, the immigration judge misinterpreted the facts of the case as well as the government counsel at page 10 of their answering brief. They confused the names Medrano versus Mr. Cano. Mr. Medrano is the political activist who the petitioner indicated had beaten him and threatened his life. The officer who requested the confidential information that the petitioner had in his possession was Mr. Cano, and that is the army major. So in light of the confusion between Mr. Medrano and Mr. Cano, or Officer Cano, there was confusion as to exactly why then would a military officer warn the petitioner of the pending coup. Because of that inconsistency, in fact it was not an inconsistency, but a misinterpretation of the facts of the record, that portion itself does not support an adverse credibility finding. The next factor that the immigration judge considered in terms of the adverse credibility finding was in reference to the fact that two presidents have in fact succeeded President Serrano and have taken steps to provide peace and human rights back into Guatemala. With respect to that issue, there's absolutely no nexus between the steps that the two presidents have taken in order to restore human rights and peace back into Guatemala, to the fear of persecution that the petitioner believes that will occur at the hands of the military as well as political activities. Again, the country reports from 1997 as well as today also support the theory of a petitioner's position in terms of the persecution that would occur at the hands of the military. More specifically, the country reports indicate that former police commissioners as well as the army and national police still use torture in order to obtain confessions, and they do so with impunity. Again, because these factors are provided by the government, the adverse credibility finding in this respect is not supported by law. The third factor, which is that the immigration judge indicated that the president and his family and that of the bodyguards had not received any kind of threats in Panama, is also unsubstantiated by the facts of the record. What about the getting struck on the head with, beaten with a cane? That was omitted from his asylum application. The judge seemed to be impressed by the fact that that wasn't... That was one of the factors also included in her adverse credibility finding in reference to that admission. In no part of the record before the immigration judge was ever presented the questions and answers that were presented to the petitioner during the interview of the asylum. In fact, the immigration judge... Well, the asylum application had a whole different story. Correct. The petitioner indicated that... Which he never corrected, apparently, at least until the eve of the... Until the time of the hearing. The actual application itself was prepared by Natario, and that was testified by the petitioner during the hearing before the immigration judge. He informed the court that he in fact never read or reviewed the application, but it was submitted on his behalf by the Natario. What are we supposed to make of that when somebody signs an application telling, saying, this is my story, and then shows up on the hearing day and says, no, that's not reading my story. I have a completely different story, and this was actually filled out by somebody else. How is the BIA supposed to treat that? Well, as to the BIA, I'll get to that in a minute. With respect to this court, this court has already determined that... And it has recognized the fact that Natarios take place on an almost everyday basis in filling out applications on behalf of applicants and aliens, and that it is pretty much unscrupulous on behalf of the Natario to essentially have the applicant sign certain documentations without properly reviewing it with the applicant himself. Generally, the applicant would provide the information to the Natario to prepare the application in a form, and then the application is then submitted. So we just should take these applications seriously? No. In fact, that specific point was given an opportunity to the petitioner before the immigration judge, where the immigration judge allowed the petitioner to make substantial changes to the application. Through counsel at the lower proceedings, that is when he changed portions of the asylum application. But not all of it? No, that's correct. And didn't add in the beating with the cane and whatever? No. What happened was essentially that when he added on the information as to his position of persecution in asylum, the immigration judge noted for the record that also the trial attorney indicated that the position of the petitioner with respect to the persecution was in fact in conformity with what she believed was testified to in the initial application for asylum. So in essence, there is no inconsistency between the application, excuse me, between what he's testified and his position on the theory of persecution in Guatemala. The trial attorney indicated to the judge off record, but the immigration judge noted on the record that the trial attorney in fact agreed with the position and the changes that was made on the theory of persecution for asylum. The immigration judge also noted on the record that there were certain markings on the asylum application which indicated a possible review of the application by the officer with the alien. That too, she questioned as to, excuse me, there was no certainty as to what exactly those markings meant. In fact, she placed, she made in her own decision that she in fact, it could have been several possibilities as to what the markings in fact meant on the actual asylum application. Again, there was no submission of the questions and answers of the asylum application that were taking place between the alien and the officer. They were never presented to court. They were never presented to the alien based on the fact that the individual had the asylum application prepared by Nathario and basically were under the assumption of unknown questions that were posed between the asylum officer and the alien, the petitioner. It's not unreasonable to conceive his explanation that he didn't essentially know what he had to say at the asylum interview. It was not until he was given his opportunity before the immigration judge that he made substantial changes to his asylum application to accurately reflect both what he said before the asylum officer and what he was going to present to the immigration judge. Why don't you, because you're running out of time, why don't you quickly address the assuming credibility, the evidence of persecution, past or future. The board indicated that assuming credibility is established and still fails to establish the essence of the asylum application and withholding. The bottom line of the board's decision is that they know two things. One, in reference to the inconsistencies noted by the immigration judge, and then two, by the general testimony provided by the petitioner. With respect to the inconsistencies of the immigration judge, well that's essentially her decision regarding the adverse credibility finding. As I've addressed each one and indicated there in fact is no inconsistencies which would substantiate an adverse credibility finding, then that also lends to the position that there is no inconsistency that would support the position of the board with respect to their position on the denial of asylum and withholding. However, with respect to the general testimony that was provided by the petitioner that is alleged by the Board of Immigration Appeals, the testimony was in fact very specific as to the nature and the means of the persecution. The specific people that he believed would be his persecutors were that of the military officials and political parties based on the confidential information that he had. But what was the evidence that they'd actually done anything? One was, well the evidence was in terms of the political party actually beating him, a political party member actually beating him. So he was relying upon a theory of past persecution with that respect. In reference to the well-founded fear of future persecution where there's of course the presumption that a well-founded fear of future persecution is presumed if there's a past persecution. However, with respect to the military persecutors, it was based on, again, confidential information that he obtained during the course of his employment with the presidential office. That being information relating to the misappropriation of $14 million by the government. I seem like my time is up. Okay, I think we have it. Thank you. Good morning, Your Honors. May it please the Court. My name is Lynn Harris and I represent the Attorney General in this matter. Your Honors, what we have in front of us now is the case of Mr. Jimenez who filed an application for political asylum in 1996 asserting in essence that he was in mortal danger if he ever returned to his native Guatemala because he had at one time worked for the sister of a former prisoner. He was the bodyguard of Bright. Right. However, the immigration judge rightly concluded that there were so many problems with Mr. Jimenez's consistency not only between his asylum application and his hearing testimony which were fairly significantly different but also in regard to his inability to cohesively indicate exactly what he feared, why he feared it, and from whom he feared it. She noted with particularity that he provided no evidence to support any of the claims that he was making and that the evidence in the country report specifically with regard to his claims that although they were intermingled and he did intermittently claim both fearing the army and fearing political parties what he mentioned most often in his testimony was political parties. That current individuals in power in Guatemala today which would have been at the time of his hearing in January of 1999 wanted to harm him. And he interspersed in their references to various political parties and vaguely assorted members of maybe one maybe the other political party had positions of power and that they would want to harm him because of his work for this former administration discredited administration. But it was not, there's no evidence. Well he did ultimately come up with the knowledge of the 14 million dollar theft or whatever. He did very non-specifically claim that he was aware because of his presence in the presidential house. He had knowledge of secrets and that was the one that he came up with under question. Right. Let's assume that that in fact is true. Let's assume that that's what he had the position he had access to these secrets because of his position and he knew of a 14 million dollar active corruption on people who are currently still active in the government of Guatemala. Well your honor I would submit firstly that it is of course. Who would not want that kind of bad information brought out in public. It would damage their current status. Your honor, well I would indicate first that he's indicating that he's aware that the administration that he worked for misappropriated. Yeah, well are those people all gone from Guatemala? That's a good point your honor and it was up to the respondent or the petitioner to provide evidence to support his claim. The burden of proof rests on him and I would say that the country report certainly does not that was in the record at the time of his hearing merits hearing certainly does not support the contention that political parties in Guatemala are actively involved in mercenary repercussions against one another. Well wait a minute, he comes up with a corrupt act. Let's assume that the person who committed it is now involved in a trusted position. That person would go to great lengths not to have his prior corrupt act exposed by this whistleblower. If that were all neatly wrapped up on the record would that not be a legitimate cause for concern of retribution if he went back to Guatemala? Well I suppose your honor It wouldn't be cured by the change of administration it would really be more retribution based on his knowledge of this calamitous secret. Well your honor I suppose if all of those things were true but I think that's really stretching credibility in this case especially when we've had now five peaceful transitions from one administration to another all representing changes from one majority political party. Look we know from our own government that the fact that people are in government doesn't ensure that they don't have skeletons in their closet. That's what I'm trying to get you to focus on. I'm accepting that there's been a peaceful transition but there's somebody out there in that current political structure who has this horrible skeleton in his closet and this is the guy who if he comes back to Guatemala is going to blow the whistle on him or he fears that. So if this guy crosses into Guatemala he's going to have his henchmen knock him off. I know I'm not trying to write a screenplay but I'm just trying to test your position the government's position as to what you think the relevance of the change of administrations are if you accept the hypothesis that what he's fearful of is actions taken against him because of his prior activities privy to the family secrets and somebody who's got this is a major skeleton I mean 14 million bucks is a hunk of change in Guatemala even here maybe. Well I would say Your Honor if in fact Mr. Jimenez had proven that had named a name at any point named a name that this is a person who I know would try to harm me or would send his henchmen out to get me and he's a member of this political party that never happened first of all his allegations were all vague and very nonspecific it could be this, it could be that it could be this party, the other party and never once did he say you know I saw this person this person and this person sign off He said he heard about it He said he heard about things that were occurring in the presidential palace however I would say for him to be able to for this to be credible enough for an immigration judge and to grant asylum on the basis of I don't even know what ground you would list that but you know he would have to be able to say this person stole 14 million dollars He might not know he may know that it was done and the person who's Well if he can't identify the person Well but the person can identify him The person is worried about people who are part of the family household who are now out of the country and this guy suddenly shows up in Guatemala and now this person is worried about him Again I think it would the burden would have been on the petitioner to show that anybody that served in that former administration or his household is at risk or has been at risk in Guatemala today and certainly there's no evidence of that and I would say your honor that the record as it stands simply does not compel a conclusion that Mr. Jimenez has a real objective fear of persecution were he to go to Guatemala today the country his primary claim that members of political parties are in positions of power now in his words in 1999 now six years ago and would want to harm him and would remember him simply doesn't stand any rational doesn't survive any rational test the country report at that time even in 1997 the country report said there is no evidence that anybody that has a legitimate fear of political oppression in Guatemala because there's no record there's no indication that political parties actively oppress or repress one another no one can dispute that there's crime in Guatemala and that there might be a significant issue of crime in Guatemala that anybody might fear but it's not related specifically to this gentleman he's not shown that he has he's made vague and non-specific allegations that he knew things that he learned things while he was a bodyguard in the presidential house he submitted an asylum application that was vastly different from anything that he testified to and he's he's been unable with these shifting theories to provide any concrete evidence to support anything that he said despite his representations to the immigration judge at his initial calendar hearing in November of 1996 that he would supply documentary evidence he would present witnesses to support his claim and then when he got even a year and a half more time to prepare his testimony he would since his initial merits hearing was cancelled on the day of the hearing because his counsel was unavailable still he walked into court with no evidence and he on the day of that hearing disavowed the vast majority of the claims in his asylum application it was utterly reasonable for the immigration judge to find that he had not met his burden of proof that she could not find him credible on the record before her and the board was correct in also affirming the immigration judge in finding that this record simply does not compel a conclusion contrary to that reached by the immigration judge thank you I'll give you a minute for rebuttal don't squander it in reference to just a couple points that she made one in reference to the the persecutors and the identification of them well the government did that on his behalf and submitted those documents and that was in reference to the country reports the country reports actually substantiate the claim that it is the military the army, the national police force that through interrogations they do commit torture on a routine basis to obtain confessions so in reference to that that point being addressed that's okay I think we have your position thank you very much thank you okay we'll call the next case excuse me, before we do that the next case on the docket in any event on the calendar is Lee v. Gonzalez that case has been submitted so we will proceed to Ha v. Gonzalez
judges: Browning, Fisher, Bybee